# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.K., by and through his Mother, | : | |
| BARLOWE K. | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 17-1135 |
| | : | |
| PRESTIGE ACADEMY CHARTER | : | |
| SCHOOL, et al., | : | |
| Defendants. | : | |

**McHUGH, J.**                                                            **JANUARY 31, 2018**

## MEMORANDUM

    This case concerns both substantive and procedural questions as to the enforceability of an agreement between a parent and a charter school in settlement of claims under the Individuals with Disabilities Act (IDEA), 20 U.S.C. § 1400 (2004). The substantive question is whether the agreement can be enforced against the Delaware Department of Education, as the responsible State Education Agency, where the charter school has ceased to exist, leaving the child with nowhere else to turn to vindicate his right to a free and appropriate education. The threshold procedural question is whether Plaintiff has waived federal jurisdiction because the settlement was finalized outside the statute's resolution process, or whether jurisdiction nonetheless exists because the case necessarily presents a substantial issue of federal law. Because I am persuaded that the agreement is enforceable against the State, and because I further conclude that resolution of that question necessarily creates a substantial federal question, Delaware's pending Motion to Dismiss will be denied.

1

**I.     The IDEA Framework**

The Individuals with Disabilities Education Act (IDEA) requires states to "make available a free and appropriate public education ["FAPE"] to all children with disabilities residing within their borders." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 556 (3d Cir. 2010). The Act seeks to ensure that every child with a disability has access to a FAPE that is tailored to meet his or her unique educational needs. *Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510, 512 (E.D. Pa. 2014). The central mechanism for securing this right is the Individualized Education Program (IEP), which is a package of special educational and related services designed to meet the unique needs of a disabled child. *H.E. v. Palmer*, 220 F. Supp. 3d 574, 577 (E.D. Pa. 2016). To administer those services, the IDEA relies on states' education apparatuses.

The IDEA requires states to submit a plan of compliance to the Secretary of Education in exchange for federal money. § 1401(9). The Secretary then distributes federal funding to State Education Agencies (SEAs), which are responsible for apportioning those funds to schools and other Local Education Agencies (LEAs). § 1413(a). That process requires LEAs to apply to their SEA for funding. § 1412(a)(11)(A). With this funding, the LEA provides services to children with disabilities through, *inter alia*, developing an IEP after evaluating the child and continually making revisions as appropriate. §§ 1414(d)(1)(A)(i), (d)(4). The Fourth Circuit has aptly summarized the framework as follows:

> The IDEA delegates supervisory authority to the SEA, which is responsible for administering funds, setting up policies and procedures to ensure local compliance with IDEA, and filling in for the LEA by providing services directly to students in need where the LEA is either unable or unwilling to establish and maintain programs in compliance with IDEA. The LEA, on the other hand, is responsible for the direct provision of services under IDEA, including the development of an . . . [IEP] for each disabled

student, the expenditure of IDEA funds to establish programs in compliance with IDEA, and the maintenance of records and the supply of information to the SEA as needed to enable the SEA to function effectively in its supervisory role under [the] IDEA.

*Gadsby v. Grasmick*, 109 F.3d 940, 943 (4th Cir. 1997).

The Act enforces a child's right to a FAPE by providing procedural safeguards that allow parents to contest LEA decisions regarding their children. Specifically, it requires states to adopt procedures affording an opportunity for any party to present a due process complaint regarding the "identification, evaluation, or educational placement of the child, or the provision of a [FAPE]." §§ 1415(a), (b)(6). Upon the LEA or SEA receiving that complaint, parents are entitled to an impartial due process hearing. § 1415(f)(1)(A). The findings and decisions that result are appealable in both state and federal district court. § 1415(i)(2)(A).

In addition, out of concern that such adversarial proceedings alone could breed distrust and discourage cooperation between the parents and school personnel, Congress amended the IDEA in 1997 and 2004 to facilitate the amicable resolution of disputes prior to the formal due process hearing. *T.L. ex. rel. Latisha G. v. Pennsylvania Leadership Charter Sch.*, 224 F. Supp. 3d 421, 425 (E.D. Pa. 2016) [hereinafter "*T.L.*"] (citing H. R. Rep. No. 108–77, at 85 (2003); Pub. L. No. 105–17 (1997); Pub. L. No. 108–446 (2004)). Two additional processes were added: the resolution meeting and period [hereinafter "resolution process"], and the mediation process.

The resolution process begins when the LEA receives a proper due process complaint and requires that a due process hearing not be held until at least 30 days after the filing of that complaint. 34 C.F.R. § 500.510(b) (2007). In the interim, the LEA must hold a resolution meeting—akin to a pretrial settlement conference—within 15 days of the filing of a due process complaint. *Id.* § 300.510(a). The meeting allows parents to "discuss their complaint, and the facts that form the basis of the complaint," and gives the LEA "the opportunity to resolve the

3

complaint." 20 U.S.C. § 1415(f)(1)(B). To ensure productive resolution meetings, the IDEA requires the attendance of "a representative of the [LEA] who has decision-making authority." *Id.*; *see also* 34 C.F.R. § 300.510(b)(5) (allowing parents to seek the intervention of a hearing officer if the LEA fails to produce the required decision-maker). The parties may also agree to expand or contract the initial 30-day time frame between the filing of the complaint and the initiation of a due process hearing. *See* §§ 1415(e)(2)(B), (f)(1)(B)(i). And if a settlement agreement is reached "at a [resolution meeting]" or during the resolution period, the parties can execute an agreement, which is then enforceable in state or federal court. §§ 1415(e)(2)(B), (f)(1)(B)(i), 1415(f)(1)(B)(iii). Although it is less relevant here, a resolution reached in the mediation process under 1415(e)(2)(F) is likewise enforceable in federal or state court.

Ordinarily, disputes regarding a FAPE denial are between parents and LEAs. Here, as discussed more fully below, M.K.'s school, Prestige, was a charter entity that Plaintiff contends will soon be defunct. Accordingly, Plaintiff has sued the State of Delaware as the responsible SEA, and Prestige has not defended the case.

## II. Relevant Facts

M.K., now 16 years old, attended Prestige Academy Charter in Wilmington, Delaware from August 2011 to the end of the 2013-14 school year. His mother, Barlowe K., filed a due process complaint on his behalf against the Charter School in November 2015. The complaint alleged that Prestige failed to appropriately evaluate M.K. and provide an appropriate educational program to meet his needs, despite his being eligible as a student with disabilities under the IDEA. Barlowe K. eventually executed a settlement agreement with Prestige on May 9, 2016 [hereinafter "Settlement Agreement"]. *See* Ex. A. 7, ECF No. 1-1.

The Settlement Agreement itself required Prestige to "provide payment or reimbursement for up to $30,000 worth of legitimate educational expenses for [M.K.] to be utilized between [then] and M.K.'s 21st birthday," *id.* ¶ 3, in addition to attorney's fees in the amount of $15,000, *id.* ¶ 5. Requests for reimbursement that qualified as legitimate educational expenses, as defined by the Agreement, were to be paid within 30 days of receipt. *Id.* ¶ 4. These included expenses for tutoring, related services (as defined under the IDEA), vocational training, educational evaluations, behavioral and social skills training, and assistive technology. The State of Delaware is not a party to the agreement and did not participate in the negotiations.

In reaching the Agreement, the Hearing Panel Order dated January 4, 2016 states that, on December 30, 2015, the parties orally agreed to waive the 30-day waiting period in light of "settlement negotiations [that] were taking place." Def.'s Ex. A-1 p. 1, ECF No. 4-1. That same order states that the resolution period ended on the day of the verbal waiver. The parties memorialized that waiver in a written agreement dated January 22, 2016, and ended the due process hearing by stipulation on January 25, 2016. Def.'s Ex. A-2, A-3, ECF No 4-1.

In exchange, Plaintiff relinquished her and her son's statutory rights under the IDEA, the Rehabilitation Act, the Americans with Disabilities Act, the No Child Left Behind Act, and the Delaware state special education statutes. They also relinquished their rights arising from Prestige's noncompliance with any IDEA provisions concerning identification, evaluation, and development of an IEP for M.K., such as claims for compensatory education, tuition reimbursement, and reimbursement for attorney's fees. Plaintiff did, however, reserve the right to litigate issues of non-compliance, and claims arising from physical injuries that may have occurred while M.K. was at Prestige.

Prestige has since failed to make any payments under the Agreement, according to allegations in the Complaint. It has also not renewed its charter, and according to Plaintiff, will soon cease to be a viable entity. That means it will not be able to satisfy its obligations under the Agreement. As a result, Plaintiff contacted the Delaware Department of Education [hereinafter "Delaware"], as the governing SEA, but Delaware has denied responsibility for the relief negotiated in the Settlement Agreement.

Plaintiff has sued Prestige and Delaware alleging two counts: (i) violation of the IDEA, and (ii) breach of contract regarding M.K.'s "ongoing federal right." Delaware premises its denial of responsibility on the fact that the Agreement was not made through the resolution process, and on that same basis has moved to dismiss the case for lack of subject matter jurisdiction. In the alternative, Delaware moves to dismiss for failure to state a claim, contending it has no legal responsibility, and supporting its position with eight different arguments.

## III. Standard

Defendant Delaware's motion is two-fold, first challenging the existence of jurisdiction under Rule 12(b)(1) and second, contending that Plaintiff has not made out a legally cognizable claim under Rule 12(b)(6). The standard of review for the latter is well-settled. I accept as true all of the factual allegations contained in the complaint, and assess whether they make out a plausible legal claim. *Bell Atlantic Corp v. Twombly*, 550 U.S. 554, 572 (2007). Depending on the nature of the challenge, that same standard may apply to the former. That is the case if the jurisdictional challenge is facial—that is, Plaintiff's allegations have not been contradicted. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 n.17 (3d Cir. 1977). But if the contrary is true, rendering the challenge a factual one, the reviewing court is allowed to

6

"consider evidence outside the pleadings and resolve any disputed material facts in order to evaluate the jurisdictional [challenge]." *Tonge v. Fundamental Labor Strategies, Inc.*, No. 16-cv-6310, 2017 WL 4347663, at *5 (E.D. Pa. 2017) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358–59 (3d Cir. 2014)).

Despite Defendant challenging Plaintiff's allegation that the "Settlement Agreement was reached pursuant to [the] IDEA's resolution process," Def.'s Mot. 2, ECF No. 4 (citing Complaint ¶ 13, ECF No. 1), I construe Defendant's Rule 12(b)(1) motion as a facial jurisdictional challenge. Indeed, that an agreement was reached pursuant to or during the IDEA's resolution process is dispositive of the legal question: whether the IDEA provides the basis for jurisdiction. *See T.L.*, 224 F. Supp. at 425 (E.D. Pa. 2016). As a result, it is a legal conclusion that I would not consider under the controlling Rule 12(b)(6) standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation") (quoting *Twombly*, 550 U.S. at 555)).

And as to the facts underlying Plaintiff's allegation, Defendant supplements the pleadings with public documents from the administrative proceedings leading up to the Settlement Agreement. *See* Def.'s Mot. 2, ECF No. 4. These documents reveal that Plaintiff agreed to waive the resolution process. *See id.* But even if the complaint alleged otherwise, which it does not, and I considered such allegations factual which, as explained above, I do not, that would still not amount to a factual jurisdictional challenge because I could properly consider those documents under the Rule 12(b)(6) standard, and likewise on a facial jurisdictional challenge. *See Ludovico v. Mun. of Norristown*, No. 17-cv-2214, 2017 WL 4404308, at *2 (E.D. Pa. 2017) ("[A] court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.") (citing *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458

F.3d 244, 256 (3d Cir. 2006)). Therefore, the Rule 12(b)(6) standard governs Defendant's Motion in its entirety.

IV. Discussion

A. Jurisdiction under the IDEA

Delaware argues that I lack jurisdiction here because the IDEA does not create a cause of action to enforce a settlement that takes place beyond the resolution period, and outside the mediation process. *See* Def.'s Mot. 2–3, ECF No. 4 (citing *H.E. Palmer*, 220 F. Supp. 3d 574, 577 (E.D. Pa. 2016)).

I agree, consistent with my previous holding under similar circumstances. *See T.L.*, 224 F. Supp. 3d at 428–30. There, I joined other federal courts in holding that federal jurisdiction to enforce exists only as to settlements reached under the terms established by statute. *See, e.g.*, *Hernandez v. McAllen Indep. Sch. Dist.*, No. 15-cv-397, 2016 WL 159953, at *5 (S.D. Tex. 2016); *L.M. v. Lower Merion Sch. District*, No. 10-cv-4855, 2011 WL 71442, at *3 (E.D. Pa. 2011); *J.M.C. v. Louisiana Board of Elementary & Secondary Educ.*, 584 F. Supp. 2d 894, 898 (M.D. La. 2008); *Bowman v. D.C.*, No. 05-cv-1933, 2006 WL 2221703, at *2 (D.D.C. 2006).[1] Agreements reached outside of the period are private settlements enforceable under ordinary principles of state contract law.

---

[1] I considered that interpretation most reasonable since any other would render the resolution process superfluous. *See T.L.*, 224 F. Supp. 3d at 430. Indeed, facilitating speedy resolution of disputes— whether through settlement or a due process hearing—seems to be all that is accomplished by providing a 30-day resolution period before a due process hearing is held. *See* 20 U.S.C. § 1415(f)(1)(B)(ii). The only incentives for parties to reach a settlement during that period seems to be that the statute renders such settlements enforceable in federal court, *see* § 1415(f)(1)(B)(iii), and that a party may void the agreement within three business days of its execution, *see* 30 C.F.R. § 300.510(e). Thus, I held that the IDEA does not provide the basis for jurisdiction to enforce a settlement reached beyond the resolution period and outside of mediation. *T.L.*, 224 F. Supp. 3d at 29–30.

But that does not end the inquiry, because "in certain cases, federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016) (affirming that federal jurisdiction lies if "[a] plaintiff seeking relief under [a] state law must undertake to prove, as *the cornerstone* of his suit, that the defendant infringed a requirement of the federal statute") (emphasis added). Because, in practical terms, the ability of Plaintiff to enforce the settlement depends on whether Delaware can be liable for an agreement negotiated by a defunct LEA, and because a core issue under the IDEA is the scope of responsibility of an SEA, I asked the parties for supplemental briefing addressing *Grable*. Having considered the parties' arguments, I am persuaded that jurisdiction exists under § 1331.

### B. Jurisdiction over state law claims that turn on a substantial federal question under 28 U.S.C. § 1331

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." § 1331. Under *Grable*, federal jurisdiction exists over state law claims that (i) necessarily raise a stated federal issue, (ii) that is actually disputed, (iii) substantial, and (iv) one which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. *Id.* at 314. Additionally, the Third Circuit, consistent with other circuits, has since recognized that the federal issue must appear on the face of a plaintiff's well-pleaded complaint. *See Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 403 (3d Cir. 2012).

> i. *The Complaint here necessarily raises a federal issue about which there is an actual dispute.*

9

The matter is unusually straightforward here because Plaintiff has brought suit to enforce rights conferred by a federal statute. Plaintiff argues that she has no means of recovery against Prestige, the LEA, and can only protect her son's rights by enforcing the Agreement against Delaware, the SEA.

Delaware argues that no federal issue is necessarily raised by the Complaint, because, at its core, "[t]his is a contract action" to determine whether M.K. is owed money, and by whom. Def.'s Sur-Reply 4–5, ECF No. 15. This ignores the fact that the contract in question was negotiated to vindicate rights conferred by federal law, and that Delaware's defense requires resolution of the scope of its duty as the SEA. Delaware cites *Lawrence Township Board of Education v. New Jersey*, 417 F.3d 368 (3d Cir. 2005) for the proposition that there is no federal question here, but the Third Circuit's analysis actually supports the opposite conclusion. There, the Court held that LEAs do not have an express or implied right of action under the IDEA. *Id.* at 372. But the foundation for its ruling was the fact that "[the] case [was] not about the child's educational needs, but rather the Township's fiscal ones." *Id.* at 371. The opinion contrasted the procedural safeguards Congress put in place for parents and disabled children, like M.K., to secure their rights under the IDEA with the lack of any similar rights for LEAs.

The issue here is the scope of Delaware's responsibility as an SEA, and its designation as such is the creation of a federal statute. By definition, this is a question of federal law. *See Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510 (E.D. Pa. 2014). And that appears as the sole question on the face of every count of Plaintiff's complaint. Compl. ¶ 45, ECF No. 1 (alleging under Count I that, "[Delaware], because the Charter School is defunct and . . . cannot provide the relief set forth in the Settlement Agreement, is obligated to fulfill the terms of the Settlement Agreement in order to fulfill its obligation as SEA to provide a FAPE to M.K. under

10

the IDEA"); *id.* ¶ 52 (alleging under Count II that "[Delaware]. . . has a statutory obligation under federal law to fulfill the terms of the Settlement Agreement should the Charter School fail to do so"). Plaintiffs here do not merely mention the IDEA, but premise all their claims upon it. The fact that Plaintiff can seek to enforce her rights in a state court does not undercut the existence of a federal issue, where both Plaintiff's actual ability to recover, and Delaware's defenses, depend upon the construction of a federal statute.

In that respect, this case is vastly different than *Merrill Lynch*. Plaintiff there exclusively brought claims under state law, and that was pivotal to the Court's decision. *See Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.* 772 F.3d 158, 164 (3d Cir. 2014), aff'd, 136 S. Ct. 1562 (2016). Here, in stark contrast, Plaintiff has brought *no* claims under state law, the state court is simply the forum where Plaintiff would be seeking enforcement of an agreement protecting her son's rights under federal law, and her pursuit of these claims in state court would necessarily involve important questions of federal law.[2] *Grable* was based on "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 308.

    ii.   *The Complaint raises an issue of federal law that is substantial.*

Under *Grable,* the federal issue must be substantial. The facts of that case illustrate the application of the rule. There, a former land owner brought an action to quiet title against a purchaser who had acquired the property in question at a tax sale conducted pursuant to an IRS

---

[2] Similarly, *Lippitt v. Raymond James Financial Services, Incorporated* does not support Delaware's position. *See* 340 F.3d 1033, 1041 (9th Cir. 2003). There, the plaintiff brought securities claims under California law. The defendants removed the case on the ground that federal securities laws were necessarily implicated because the language of the complaint "tracked almost verbatim the misdeeds prescribed by federal law." *Id.* at 1037. The Ninth Circuit reversed and remanded the case to state court because "Lippitt [did] not have to rely on a violation of [federal law]" to succeed in state court. *Id.* at 1043. The opposite is true here.

11

lien. 545 U.S. at 311. The plaintiff sought to set aside the sale on the ground that improper notice was given under the Internal Revenue Code. *Id.* The defendant purchaser of the property removed the case to federal court, and the Supreme Court deemed such removal proper. *Id.* Although the action had been brought under state law, and there was no issue of federal constitutional law, the construction of the Internal Revenue Code's notice provision was an important issue of federal law, for it implicated the federal government's "strong interest in the prompt and certain collection of delinquent taxes, . . . and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers . . . to satisfy themselves that the service has touched the bases necessary for good title." *Id.* at 315. The issue here—the scope of responsibility of an SEA under the IDEA—has a similarly broad and systemic impact.

In cases where no federal jurisdiction has been found to exist, it is because such a systemic impact is lacking. For example, in *Gunn v. Minton*, 568 U.S. 251, 259 (2013), the Court held that there was no federal jurisdiction where a plaintiff brought a legal malpractice claim premised on his attorney's failure to argue for a particular exception under federal patent law. The Court concluded that although the claim necessarily involved the application of principles of federal law, it had no broader impact: "There is no doubt that resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties in that case. But something more, demonstrating that the question is significant to the federal system as a whole, is needed." *Id.* at 259–60.

Similarly, federal jurisdiction was held not to exist in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), which involved application of the Federal Employees Health Benefits Act to the settlement of a personal injury action litigated in state court. The

Court held that the type of litigation in question was traditionally handled in state court, and did not involve a "pure issue of law . . . that could be settled once and for all and thereafter would govern numerous . . . cases." 547 U.S. at 701. *See also MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 413 (3d Cir. 2015) (denying jurisdiction because, *inter alia*, the dispute concerning the Medicare Act did not present a "discrete federal issue" that "would be controlling in numerous other cases," and the case did "not call into question the validity of a federal statute or the conduct of a federal actor"). In that regard, another critical question is whether the federal statute at issue creates a private right of action. Thus, in *Merrell Dow Pharmacy Inc. v. Thompson*, 478 U.S. 804, 807–12 (1986), jurisdiction was denied where plaintiffs claimed that the defendant misbranded its drug under federal law. The Court held that the federal law was a mere component of plaintiffs' other state law theories, and did not provide an avenue for private remedies if a defendant violated it.[3]

In contrast to these cases, Plaintiff here invokes only federal law under a statute that creates a private right of action that is typically litigated in federal court. There would be no case or controversy under Delaware law or action in a Delaware court in the absence of the IDEA, and the agreement Plaintiff would be seeking to enforce involves only rights conferred by federal law. Furthermore, Delaware's arguments implicate the very structure of the Act—the responsibilities of an SEA, and ultimately the ability of a child to be educated. I find those issues substantial, and am persuaded that their resolution will govern subsequent cases as to the responsibility of an SEA when a charter school becomes defunct.

Delaware's position for purposes of contesting federal jurisdiction—that this is a mere

---

[3] *See also Siravo v. Crown, Cork & Seal Co.*, 256 F. App'x 577, 580 (3d Cir. 2007) (finding jurisdiction lacking where the federal statute did not create a private cause of action, and plaintiff only made passing references to it).

13

contract action—would have me ignore the substantive basis on which it has otherwise sought dismissal. In that sense, Delaware's arguments mirror the arguments addressed in *Charlene R.*, where I did not allow state law provisions to control because "[t]he IDEA's goal of assuring a FAPE would be frustrated if a State may merely draft a provision that disclaims any liability for its oversight obligations under the Act." 63 F. Supp. 3d at 521.[4]

In *Charlene R.* I based my holding on the language of the Act under §§ 1412(a)(11)(A)[5] and 1413(g)(1)[6], and Congress's intent when enacting them as discerned by the Third Circuit in *Kruelle v. New Castle County School District*, 642 F.2d 687, 696 (3d Cir. 1981). *See Charlene R.*, 63 F. Supp. 3d at 513–16 (citing *Kruelle*, 642 at 696). Specifically, after examination of § 1412(a)(11)(A)'s legislative history, the Third Circuit concluded that "Congress considered the establishment of a single agency on which to focus responsibility for assuring the right to

---

[4] The defense is correct that *Charlene R.* is not binding but only persuasive authority. Not surprisingly, as the author of the opinion, I find it persuasive. But putting judicial vanity to one side, *Charlene R.* has been followed or cited by multiple courts, and no court has rejected or criticized it. *See, e.g.*, *R.V. v. Rivera*, 220 F. Supp. 3d 588, 593 (E.D. Pa. 2016) (Beetlestone, J.); *H.E. v. Palmer*, 220 F. Supp. 3d 574, 584–87 (E.D. Pa. 2016) (same); *R.J. v. Rivera*, No. 15-cv-5735, 2016 WL 4366987, at *3 (E.D. Pa. 2016) (Padova, J.). *See also Johnston v. New Miami Local Sch. Dist. Bd. of Educ.*, No. 14-cv-973, 2016 WL 5122536, at *5 (S.D. Ohio 2016) (accepting that an SEA is responsible for providing a FAPE, but not directly responsible for providing the underlying services where it had taken measures to compel LEA compliance); *Santino P. ex. rel. Joseph P. v. Pennsylvania Dep't of Educ.*, No. 16-cv-5230, 2017 WL 2591936, at *7 (E.D. Pa. 2017) (holding that the "IDEA requires SEAs . . . to provide a free appropriate education when a charter school fails, [but that] the law does not provide for fee shifting under the unique facts of [the] case").

[5] Section 1412(a)(11)(A) provides: The State educational agency is responsible for ensuring that—
   (i) the requirements of this subchapter are met;
   (ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency—
      (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and
      (II) meet the educational standards of the State educational agency.

[6] Section 1413(g)(1) requires an SEA to use payments that would otherwise have been available to a local education agency or the State agency to provide special education and related services directly to children with disabilities residing in the area served by that local educational agency, or for whom the State agency is responsible.

education of all handicapped children to be of *paramount* importance." *Kruelle*, 642 F.2d at 696 (emphasis added).

Courts in other districts and circuits have also recognized the same. *See, e.g.*, *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1492 (9th Cir. 1986) (holding that an SEA has a responsibility to step in where an LEA refuses or neglects to provide a FAPE), *aff'd as modified sub nom. Honig v. Doe*, 484 U.S. 305 (1988); *Gadsby v. Grasmick*, 109 F.3d 940, 943 (4th Cir. 1997) (reasoning that since "it is the SEA's responsibility to ensure that each child within its jurisdiction is provided a FAPE, it seems clear that an SEA may be held responsible if it fails to comply with its duty to assure that IDEA's substantive requirements are implemented"); *St. Tammany Parish Sch. Bd. v. State of Louisiana*, 142 F.3d 776, 784 (5th Cir. 1998) (quoting *Gadsby*); *Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) ("The Fourth Circuit has further indicated that state agencies may be financially responsible for the costs of private placement where the applicable local agency was not providing a free and appropriate education.").

Delaware relies heavily upon *Woods Services, Inc. v. Hazleton Area School District*, 2016 WL 6216122, at *7–8 (M.D. Pa. 2016). The court there held that "*Grable* jurisdiction" did not exist for reimbursement claims against a local school district brought under the IDEA by a Pennsylvania nonprofit corporation that had provided services to children with disabilities. Judge Caputo found that there was no substantial federal issue, but the linchpin for his decision was the Third Circuit's earlier conclusion in *Lawrence Township* that Congress had provided no private right of action under the IDEA for suppliers of services. He further concluded that there was no dispute over the meaning of a particular provision of the IDEA, but merely factual questions concerning "monies owed based on services provided." *Id.* at 7–8. In short, *Woods* involved a commercial dispute against the backdrop of the IDEA, and not the right of a child to a

15

FAPE. The opposite is true here, as a child's right to a FAPE is at the heart of this case, and the obligation of an SEA to provide one under circumstances such as these presents a substantial question of federal law.

> iii. *Asserting jurisdiction here will not disturb any congressionally approved balance between federal and state judicial responsibilities.*

A federal court asserting jurisdiction pursuant to *Grable* must consider whether doing so constitutes an improper intrusion into matters traditionally the province of state courts. Thus, in *Gunn*, where the underlying action was one for legal malpractice, one of the factors weighing against federal jurisdiction was that states have "special responsibility for maintaining standards among members of the licensed professions." 568 U.S. at 264. The Court described the state's interest in regulating lawyers as "especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts." *Id.*

But this is not a case of federalizing a claim brought under state law.[7] As set forth above, Plaintiff's claim here emanates exclusively from the IDEA, there is a private right of action, and federal courts are statutorily authorized to resolve such claims. State court jurisdiction exists as a subsidiary venue to enforce agreements reached under the Act. Principles of Delaware contract law are not the source of Plaintiff's claim, but in this context merely the means of enforcement of a federal right.

Admittedly, Delaware seeks to invoke principles of state law as a substantive defense,

---

[7] It is worth noting that the question of federal law in this case does not arise as a result of explicit or implicit incorporation in a state law. As Delaware concedes, the law governing that issue does not incorporate nor does it even reference a federal statute, let alone the IDEA. *See* Def.'s Mot. 4, ECF No. 4.

16

and to that extent there is a conflict. But that conflict but goes to the very heart of the IDEA. As was case in *Charlene R.*, this case directly involves Delaware's obligations under the IDEA. Congress has conferred specific authority on the states under the IDEA. As I held in *Charlene R.*, the responsibility of an SEA to ensure that every child receives a FAPE is a critical structural issue under the IDEA. Any conflict between federal and Delaware law in deciding that issue weighs in favor of federal jurisdiction.

In that regard, it should be noted that this case involves not just federal law but federal funding, as Delaware, like other states, receives federal grants to assist in discharging its responsibilities. For example, for fiscal year 2016, $36,565,162 in federal grants was awarded to Delaware. Delaware Department of Education, *Special Education: Grants and Funding, Part B Interactive Spreadsheet* 1, https://www.doe.k12.de.us/cms/lib/DE01922744/Centricity/ Domain/78/Interactive%20pdf%20version.pdf (last visited 1/29/2018).

Consequently, ruling in this case will not disturb a congressionally approved balance between federal and state judicial responsibilities, but rather serve to delineate the responsibilities of a state under the terms of a federal statute.

I therefore conclude that federal question jurisdiction exists here.

**C. Substantive arguments supporting the motion to dismiss**

Delaware advances eight different arguments to suggest that the complaint should be dismissed for failure to state a claim. Four of them are substantive in nature, and I address them first. Delaware contends that the Department of Education is not liable for the debts of the charter school as a matter of Delaware law; that it cannot be bound to the terms of the Settlement Agreement because it was not a party to the contract; that Plaintiff must proceed under Delaware

corporate law in order to obtain recovery, including any remedies available under bankruptcy law; and that enforcement of the contract against the Department would violate public policy.

These defenses virtually mirror those raised by the Commonwealth of Pennsylvania in *Charlene R.*. There is nothing in the applicable Delaware law cited by the defense that renders the analysis any different here. The essential and overriding point is the ultimate responsibility of an SEA to provide a FAPE. *Charlene R.*, 63 F. Supp. 3d at 520–21. In the absence of any new authority to the contrary, and with no new argument having been raised by Delaware that would cause me to reconsider the result I reached in *Charlene R.*, I reach the same result here and reject the substantive grounds advanced in support of dismissal.

### D. Procedural arguments supporting the motion to dismiss

Delaware advances four additional defenses that are procedural in nature. It contends that Plaintiff's complaint was not brought within the applicable statute of limitations; that it should be barred by *laches*; that the claim is not ripe for adjudication; and that Plaintiff failed to make proper service.

The arguments as to timeliness are closely related. The defense argues that because M.K. was denied a FAPE more than two years ago, the time with within which to bring a claim has expired. This ignores the fact that the present claims are based on violations of the Settlement Agreement. It is not disputed that Plaintiff's due process complaint was timely filed on November 30, 2015, well before the deadline of October 2, 2016. *See* Pl.'s Resp. 19, ECF No. 10. Delaware essentially suggests that I treat this present action, premised on violations of the Agreement, as accruing (and therefore time-barred) on the same date as that for filing a due process complaint.

Such a ruling would contradict a basic principle underlying statutes of limitations: that a cause of action accrues at the time of the wrongful act—*i.e.*, when it comes into existence as an enforceable claim or right. *See, e.g.*, *Krahmer v. Christie's Inc.*, 911 A.2d 399, 407 (Del. Ch. 2006); *Coleman v. PricewaterhouseCoopers, LLC*, 854 A.2d 838, 842 (Del. 2004); *Accrue*, Black's Law Dictionary (10th ed. 2014). I therefore reject Defendant's suggestion. Until there was a breach of the underlying Settlement Agreement, Plaintiff could not sue to enforce. Even if one assumed that a breach took place on the very day the Agreement was executed, and further assumes a two-year statute of limitations for an action to enforce, the time within which to bring an action would not expire until April 29, 2018. Pl.'s Resp. 16, ECF No. 10. Moreover, because I conclude that the statute of limitations itself has not run, there is little merit to an argument based upon *laches*. In that regard, however, purported delay on the part of the Plaintiff is a particularly weak argument where Delaware itself argues that even now this matter is not yet ripe for resolution.

As to ripeness, reputable counsel of record has represented to the Court that Prestige has ceased operation and is not renewing its charter. On that score, Prestige was served in this action but has failed to respond, which certainly lends credence to the proposition that Plaintiff cannot realistically look to it for performance. To the extent that Delaware can show there is meaningful recourse against Prestige, that remains a substantive defense. But in a case where a child's education is at stake, Plaintiff's allegations here are sufficient to present an issue ripe for resolution.[8]

---

[8] It bears mention that, to the extent Delaware is required to meet the obligations of Prestige, it retains the same options as Plaintiff to pursue recovery against it. In the meantime, however, M.K. has independent rights under the IDEA and Delaware has independent responsibilities as an SEA where an LEA fails to meet its obligations.

Finally, Delaware argues insufficient service because Plaintiff's method did not comply with a Delaware statute. But federal procedural rules govern service of process here, and Plaintiff's methods comply with those rules. *See* Fed. R. Civ. P. 4(j)(2)(A).

### E. Conclusion

For the reasons set forth above, I will deny Defendant's Motion to Dismiss in its entirety.

      /s/ Gerald Austin McHugh
United States District Judge