IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.K., by and through his Mother, BARLOWE K, | : : : : : : : : : : | CIVIL ACTION No. 17-1135 |
| Plaintiffs, | | |
| v. | | |
| PRESTIGE ACADEMY CHARTER SCHOOL, et al., | | |
| Defendants. | | |

**McHUGH, J.**                                                                                                                July 2, 2020

### MEMORANDUM OPINION

This case addresses the obligation of a state's department of education to provide statutorily mandated services to students within its jurisdiction under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, where a charter school has failed to do so. Plaintiff M.K. was enrolled as a student at Prestige Charter Academy, and his mother brought a due process claim alleging that Prestige failed to appropriately evaluate M.K. or provide him an appropriate educational program to meet his needs, despite his being eligible as a student with disabilities. A settlement agreement was negotiated with Prestige under which it agreed to pay up to $30,000 in remedial education expenses along with counsel fees in the amount of $15,000. Prestige then ceased operating, and aside from the payment of counsel fees did not otherwise fund the settlement. Plaintiffs then sued Prestige, along with Delaware's Department of Education, as the responsible State Education Agency (SEA). In a previous Memorandum Opinion, I held that the Department of Education must fulfill the obligations of the settlement if Prestige has failed to do so, because to hold otherwise would result in a student not receiving the education to which he was entitled under the IDEA. ECF 16, at 14-16; *see*

*Charlene R. v. Solomon Charter School*, 63 F. Supp. 3d 510, 512 (E.D. Pa. 2014) (holding that a state's department of education must step in where a charter school or other local education agency is unable to provide statutorily mandated services to its students).

The case has traveled a difficult path since, with strong disagreements between the parties as to the issues before the Court and the appropriate scope of discovery. From the outset of this litigation, the Department of Education has vigorously defended the case, advancing a number of substantive and procedural defenses in an initial motion to dismiss. Since then, it has sought to call into question seemingly undisputed facts, at times apparently taking the position that Plaintiffs must relitigate the entire underlying dispute. The shifting nature of the Department of Education's defense has made the case difficult to manage, as its position as to what facts are material or in dispute seems constantly to evolve.

Plaintiffs have now moved for summary judgment. At oral argument, the Court endeavored to gain clarity as to the Department of Education's position. I recognize that the facts of this case present a situation that the Department of Education has not previously encountered, and that the evolving nature of its position is in part a reflection of that fact. Nonetheless, I am persuaded that the only material facts of the case cannot credibly be disputed.

A due process complaint alleging a denial of a free and appropriate public education (FAPE) was brought; an arm's length settlement intended to compensate M.K. was negotiated by reputable counsel; after an initial payment of counsel fees, the settlement was not funded; and Prestige has ceased operating. Because Prestige was a charter school, there is no Local Education Agency (LEA) to assume responsibility, with the result that the State of Delaware is liable as the SEA. Plaintiffs are therefore entitled to judgment as a matter of law.

I.   **The Controlling Standard**

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party has the burden of demonstrating the absence of genuine issues of material fact.  *Id.* at 323.  If the moving party meets this burden, the nonmoving party must present evidence of a genuine issue in rebuttal.  *Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3d Cir. 1989).  On a motion for summary judgment, "if the factual context renders the nonmoving parties' claim implausible . . . they must come forward with more persuasive evidence to support their claim than would otherwise be necessary."  *Id.* at 460 n.2 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal brackets omitted).

II.  **Material Facts**

I begin by setting forth the facts as pleaded by Plaintiffs and augmented over the life of the case.  I then proceed to analyze whether those facts can reasonably be said to be in dispute.

A. **Brief Background**

**1.** *M.K.'s schooling, the due process complaint and settlement, and the closing of Prestige*.  M.K. attended Prestige Academy Charter in Wilmington, Delaware, from August 2011 to the end of the 2013-14 school year.  In November 2015, M.K.'s mother, Barlowe K., filed a due process complaint on his behalf against Prestige, which alleged that Prestige failed to appropriately evaluate M.K. or provide a free appropriate public educational program to meet his needs, despite his being eligible as a student with disabilities under the IDEA.  The parties engaged in settlement negotiations in December 2015 and January 2016, and "reached an amicable private settlement agreement" by January 25, 2016.  ECF 4-1, at 4.  By virtue of the

settlement agreement, the parties agreed to dismiss the due process complaint without prejudice. *Id.* Barlowe K. eventually executed a settlement agreement with Prestige on May 9, 2016. *See* Agreement and Mutual Release, ECF 1-1 (hereinafter "Settlement Agreement").

Just before the parties executed the final Settlement Agreement, on April 20, 2016, the Department of Education published a so-called Renewal Report for Prestige, in which it outlined Prestige's significant academic and financial problems. By October 2016, Prestige's Board of Directors decided to close, and Prestige subsequently closed at the end of the 2016-17 school year. On July 8, 2017, the chairperson of Prestige's Board of Directors confirmed all outstanding debts, which did not include any funds due to M.K. On September 20, 2017, Prestige's Board of Directors filed for dissolution of the corporation.

**2.** ***The details of the Settlement Agreement.*** The Settlement Agreement itself required Prestige to "provide payment or reimbursement for up to $30,000 worth of legitimate educational expenses for [M.K.] to be utilized between [the execution date of the Settlement Agreement] and [M.K.]'s 21st birthday," *id.* ¶ 3, in addition to attorney's fees in the amount of $15,000, *id.* ¶ 5. As defined by the Settlement Agreement, legitimate educational expenses included, for example, expenses for tutoring and related services (as defined under the IDEA), vocational training, educational evaluations, behavioral and social skills training, and assistive technology. Requests for reimbursement of legitimate educational expenses were to be paid within 30 days of receipt. *Id.* ¶ 4. The Department of Education is not a party to the Settlement Agreement and did not participate in its negotiation.

In exchange, Plaintiff Barlowe K. relinquished her and her son's statutory rights under the IDEA, the Rehabilitation Act, the Americans with Disabilities Act, the No Child Left Behind Act, and the Delaware state special education statutes. Settlement Agreement ¶ 1, ECF 1-1.

Plaintiffs also relinquished their rights arising from Prestige's noncompliance with any IDEA provision concerning identification, evaluation, and development of an IEP for M.K., such as claims for compensatory education, tuition reimbursement, and reimbursement for attorney's fees. *Id.* Plaintiffs did, however, reserve the right to litigate issues of noncompliance with the Settlement Agreement, and claims arising from physical injuries that may have occurred while M.K. was at Prestige. *Id.*

According to Plaintiffs, except for counsel fees, since the execution of the Settlement Agreement, Prestige has failed to make any payments to M.K., or fund any account that could be used by M.K. to pay for legitimate educational expenses. Because Prestige has ceased to be a viable entity, it will not be able to satisfy its obligations under the Agreement. As a result, Plaintiffs contacted the Department of Education, as the governing SEA, but the Department of Education and the state have denied responsibility for the relief negotiated in the Settlement Agreement.

As to each of the essential facts, Plaintiffs contend that they are not reasonably in dispute, entitling them to summary judgment. I consider them in turn.

### B. Material Facts

#### 1. *The due process complaint filed under the IDEA alleged a denial of FAPE.*

The Department of Education does not dispute that M.K.'s mother filed a due process complaint alleging that M.K. was denied a FAPE. The records supporting the complaint have been produced. It is clear that the complaint was properly brought and, as set forth above, the parties' pursuit of as settlement under the IDEA was memorialized in an order from the hearing officer. At a hearing in this case conducted on June 4, 2019, I set forth on the record my understanding of the history of the claim, and counsel for the Department of Education agreed it

5

was accurate. ECF 29, at 4-7. Although the Department of Education challenges whether the settlement can be characterized as one for a denial of FAPE, it does not deny that the settlement arose out of a complaint pursued pursuant to the IDEA.

### 2. *The settlement was the product of arm's length, good faith negotiation by counsel.*

At an earlier stage in this case, the Department of Education raised questions as to the legitimacy of the Settlement Agreement, and whether it was the result of an adversarial process, or perhaps the product of some form of collusion among the negotiating lawyers. This argument was frankly troubling, because counsel for Plaintiffs and counsel for Prestige—the firm Saul Ewing—are well known and respected by both bench and bar. Nonetheless, counsel for Plaintiffs was ordered to produce all documents relevant to negotiation and settlement of the due process complaint for review by the Court. Once again, I summarized the Court's review and placed that summary on the record, concluding the settlement was legitimate, which the Department of Education accepted as accurate. ECF 29, at 4-7. At argument on the pending motion, I returned to this issue with counsel for the Department of Education, inviting it to point to any evidence that would call into question the authenticity of the Settlement Agreement. Counsel conceded there was none. ECF 35, at 23-25.

### 3. *Prestige has not funded the benefits provided by the settlement.*

Throughout this case, the Department of Education has challenged whether Prestige has met any of its obligations under the Settlement Agreement. The Department of Education is correct in observing that statements by counsel in briefing are not the same as evidence. But in cases involving the enforcement of settlement agreements, counsel routinely have first-hand knowledge that both is relevant and frames the issues in dispute. Furthermore, in moving for summary judgment here, counsel for Plaintiffs has gone beyond statements in pleading and briefs

6

and submitted a declaration under penalty of perjury, reinforced by email communications in which Prestige was pressed, unsuccessfully, for payment. Declaration of Caitlin McAndrews, Esquire, ECF, 31-1.[1] In response, the Department of Education has not brought forth any evidence that would call into question the authenticity of the correspondence submitted or the veracity of counsel's declaration. In that regard, it bears mention that the Department of Education has not sought to depose Barlowe K., or any representative of Prestige, as to whether any payments were in fact made.

### 4. *Prestige is not operating and has ceased to exist except as a legal fiction under certain provisions of Delaware law.*

The Department of Education's Answer asserts a crossclaim against Prestige, which is still pending. ECF 18 ¶ 34-45. In its pleading, the Department of Education cites to its own report identifying financial and operational difficulties at Prestige, *id.* ¶ 40, and avers that Prestige's Board of Directors voted to close in October 2016. *Id.* The Department of Education further pled that Prestige decided to file for dissolution, *id.* ¶ 44, and even attached Prestige's dissolution documents filed with the Delaware Division of Corporations, *id.*

Plaintiffs have supplemented the record with a Declaration from Rodney Merriweather, the former chairperson of Prestige's Board of Directors, in which he avers under penalty of perjury that Prestige no longer exists, and has no assets. ECF 31-2. When pressed at argument

---

[1] The documents produced by Plaintiffs' counsel suggest that M.K. may have had access to other educational resources. At oral argument, counsel confirmed that she had separately represented M.K. in an unrelated action against the Red Clay Consolidated School District, which resulted in the creation of a fund of $3,500. ECF 35, at 4-5. Other documents suggest a payment of $15,000 to Plaintiffs' counsel and $2,500 to Prestige's counsel, Saul Ewing. Counsel confirmed that these amounts represented payments from Prestige's carrier, Liberty Mutual, and that the $15,000 corresponded with the amount of counsel fees set forth in the Settlement Agreement. *Id.* at 7-13. It should be noted that the funds for M.K. were for prospective expenses "up to" $30,000 that Prestige would pay or reimburse, and therefore not due immediately.

to identify a material issue of fact as to the continued viability of Prestige, counsel for the Department of Education represented that it relies exclusively on the legal proposition that a corporation remains subject to suit for three years post-dissolution under Delaware Law. ECF 35, at 12-15 (referring to 8 Del. C. § 278, titled "Continuation of corporation after dissolution for purposes of suit and winding up affairs").

### 5. *Whether the settlement represents compensation for a denial of FAPE.*

The Department of Education's final position concerning the factual record is based upon the wording of the Settlement Agreement Plaintiffs seek to enforce. The document specifically releases all claims under the IDEA, including claims for any deficiencies in the creation of an IEP and claims for denial of FAPE. The payments Prestige was obligated to make on M.K.'s behalf were for "legitimate educational expenses" until M.K. turned 21. But the Settlement Agreement begins with certain recitals, one of which states that the settlement "is not an admission by Prestige that [M.K.] did not receive the education or other services required by law." ECF 1-1, at 2. Consequently, the Department of Education argues that the Settlement Agreement does not suffice to establish a denial of FAPE. As an evidentiary matter, the Settlement Agreement speaks for itself, and Plaintiffs do not offer anything outside the writing. The contents of the Settlement Agreement therefore represent undisputed material facts, the legal significance of which is discussed below.

### III. Discussion

#### A. Given the record here, the Department of Education must make an affirmative showing of a disputed issue of material fact, and it has failed to do so.

In three cases often referred to as the "summary judgment trilogy,"[2] the Supreme Court required district courts to engage in more intensive scrutiny of the record when considering summary judgment. In *Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir. 1989), the Third Circuit grappled with the implications of those decisions. The *Williams* Court emphasized that district courts have a responsibility to vet the record closely to determine whether a purported issue of fact can genuinely be deemed in dispute, and that "a nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings." *Id.* at 460 (internal citations omitted).

The summary judgment standard thus requires a case-specific consideration of how "one-sided" the evidence is, and whether a jury could reasonably accept the nonmoving party's version of the facts. *Id.* If, given the "factual context" of the case, the nonmoving party's version of the facts is implausible, a stronger showing is required to survive summary judgment. *Matsushita*, 475 U.S. at 587.[3] And where the moving party submits sworn affidavits to support its motion for summary judgment, ordinarily the nonmoving party must offer some form of "affirmative evidence"—either direct or circumstantial—in rebuttal. *Liberty Lobby*, 477 U.S. at

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574 (1986).

[3] In *Williams*, the Court of Appeals noted that although the "implausibility" standard was recognized by the Supreme Court in *Matsushita* in the specific context of antitrust claims, "at the very least" it reinforced the general proposition that broad, unsupported denials of factual content will not suffice to survive summary judgment. *Williams*, 891 F.2d at 460 n.2.

256-57. It will not suffice simply to argue that the affidavit might be false. *See Williams*, 891 F.2d at 466.

Here, Plaintiffs have supported their motion with both documentary evidence and sworn affidavits, and the circumstantial evidence corroborates Plaintiffs' version of the facts in all respects. I begin with the "factual context." The baseline facts of the case are well defined by the record from the underlying due process action brought by Barlow K. under the IDEA. The issue at the heart of the case is defined by the Settlement Agreement Plaintiffs seek to enforce. Plaintiffs' presentation of the facts is credible, coherent, and corroborated.

Conversely, as to the purported issues of fact the Department of Education has identified at different stages in this case, its counter-narrative has little plausibility. Take the following examples:

- The Department of Education suggests that the Settlement Agreement might not be bona fide. However, accepting that argument requires one to conclude that two reputable law firms engaged in some form of collusion with no discernible motive to do so.

- The Department of Education suggests that M.K. has in fact received the proceeds of the settlement in some manner. However, this runs counter to the correspondence that has been produced demonstrating Plaintiffs' vain attempts to collect, and again would require one to assume that counsel has filed a knowingly false affidavit.

- The Department of Education suggests that Prestige might yet honor the terms of the settlement. However, this claim has so little factual support that during argument on the present motion the Department of Education essentially conceded that, to support this argument, it relies on nothing beyond a provision of Delaware law that permits a party to sue a defunct corporate entity after that entity has ceased operation.

These comprehensive examples lead me to conclude that this case is a case where the Department of Education must produce affirmative evidence to demonstrate a material issue of fact. Under the controlling case law, the rejoinder "prove it" does not suffice. I therefore conclude that the Department of Education has not shown a triable issue of material fact.

10

### B. The Settlement Agreement Plaintiffs seek to enforce represents a settlement for a denial of FAPE.

The question then becomes this: What is the effect of the agreement that Plaintiffs seek to enforce? Under Delaware law, interpreting the effect of a contractual agreement is an issue of law to be decided by the court. *O'Brien v. Progressive Northern Insurance, Co.*, 785 A.2d 281, 285 (Del. 2001); *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).[4]

Taking the document as a whole and the context in which it arose, the Settlement Agreement can only be understood as a settlement of the claim brought by Plaintiffs that M.K. was denied a FAPE under the IDEA. The specific remedy Plaintiffs seek to enforce, a fund for compensatory educational services, is the traditional remedy for a denial of FAPE. Here, the Settlement Agreement funds "[l]egitimate educational expenses," which include expenses incurred for "primary, secondary, or special education instruction or remedial tutoring provided only by certified teachers or in licensed facilities or programs." The Settlement Agreement also makes funds available for equipment and supplies "directly used by [M.K.] as a means of enhancing [M.K.]'s educational development." It also allows for funds to be used for "related services," as that term is defined in the IDEA and its implementing regulations.

In order to secure access to the funds, M.K.'s mother is required to include sufficient information so that Prestige is able to determine whether the request "qualifies as a legitimate

---

[4] The Third Circuit has recognized a distinction between contract interpretation and contract construction, the former being largely a factual inquiry, and the latter a pure issue of law. *See, e.g.*, *Ram Construction Co. v. American States Insurance Co.*, 749 F.2d 1049, 1052-53 (3d Cir. 1984). Most Delaware decisions use the terms interchangeably, as evidenced by the cases cited above.

11

educational expense." ECF 1-1, at 3-4. Significantly, the Department of Education does not offer any alternative interpretation of the settlement agreement. Instead, it relies exclusively on the prefatory recitals to argue that the Settlement Agreement was not for the denial of FAPE because Prestige disclaimed failing to provide "education or other services required by law." *Id.* at 1.

The question then becomes yet even narrower: Can the recital alone support the Department of Education's contention that the Settlement Agreement cannot be construed as a settlement for denial of FAPE? I conclude that the recital does not have such an effect. Such a recital is standard language that has appeared in every settlement agreement I have ever reviewed, which spans 32 years in practice litigating liability claims that resulted in settlement agreements, and six years as a jurist. Such language represents a legal convention, a face-saving statement meant to underscore that a settlement represents a compromise of a dispute. But it cannot reasonably be assigned a substantive meaning that would have the effect of denying the very subject of the settlement itself.

I therefore construe the Settlement Agreement as resolving M.K.'s claim for denial of FAPE.

### C. As the SEA with ultimate responsibility under the IDEA, with Prestige defunct and unable to meet its obligations, the Delaware Department of Education is obligated to honor the Settlement Agreement.

I return now to the legal principles briefly discussed in my earlier Memorandum Opinion in the case, in which I adopted my decision holding that the Pennsylvania Department of Education must honor a settlement agreement providing for remedial education where a charter school can no longer do so. ECF 16, at 14 n.4 (citing and discussing *Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510 (E.D. Pa. 2014)).

In *Charlene R.*, I undertook a comprehensive review of the purpose and structure of the IDEA. 63 F. Supp. 3d at 519. I noted that in order to receive federal money under the IDEA, a state must submit a plan of compliance to the state's Secretary of Education. *Id.* at 513 (citing 20 U.S.C. §§ 1412-1414). I noted also that the statute then places on the SEA the responsibility of apportioning the funds to Local Educational Agencies ("LEAs"), such as charter schools, whereby the LEAs apply to the SEA in order to receive that funding. *Id.* (citing 20 U.S.C. § 1413(a)). I noted further that, under the IDEA, "the SEA is responsible for ensuring that LEAs comply with the mandates of the IDEA in providing educational services to those eligible students." *Id.* (citing 20 U.S.C. § 1412(a)(11)(A)). As such, the "IDEA delegates supervisory authority to the SEA, which is responsible for administering funds, setting up policies and procedures to ensure local compliance with IDEA, and filling in for the LEA by providing services directly to students in need where the LEA is either unable or unwilling to establish and maintain programs in compliance with IDEA." *Id.* (internal citation and quotations omitted).

I further reviewed the specific obligations of SEAs. Under 20 U.S.C. § 1412(a)(11)(A), I observed, the state educational agency is responsible for ensuring that the requirements of the IDEA are met, and that all educational programs for children with disabilities, including those administered by any local agency, must meet the educational standards established by the state.

I reviewed the Third Circuit's decision in *Kruelle v. New Castle Cnty. School Dist.*, 642 F.2d 687, 696 (3d Cir. 1981), and found that it "very clearly stated that the SEA retains primary responsibility to ensure that all children with disabilities receive the education that is their right under the IDEA." *Charlene R.*, 63 F. Supp. 3d at 514. I then proceeded to discuss the unique nature of charter schools, specifically, that when they cease to operate, there is no LEA that then

13

assumes responsibility for the charter school's various obligations should the charter be unable to fulfill them. *See id.* at 519.

Counsel for the Department of Education here conceded that the structure of charter schools is the same in Delaware as it is in Pennsylvania. At oral argument, counsel stated that M.K.'s local school district, Red Clay Consolidated School District, has no responsibility to fund the settlement negotiated by Prestige; the local district's obligations are strictly prospective. ECF 35, at 18. Charter schools operate by leave of the state. Allowing their operation is a policy choice, and consequences follow from policy choices. Faced with the reality that a student who failed to receive the free and appropriate public education to which he was entitled would be left without recourse,[5] I held in *Charlene R.* that the SEA must step into the shoes of the defunct charter school to honor its obligations. *Id.* at 519. I stand by that conclusion here. It is required by the structure of the IDEA, and the case law applying it.

The Delaware Department of Education is legally responsible for performance under the Settlement Agreement, and summary judgment will be granted in Plaintiffs' favor.

---

[5] In that regard, to require M.K. to relitigate his claim following the demise of Prestige would also frustrate the purpose of the IDEA, which is to assure that children receive the education to which Congress said they are entitled. The case is already three years old. Starting over would be costly, time-consuming, and impractical. With Prestige no longer operating, the records and witnesses necessary to reconstruct the claim would be difficult if not impossible to produce. Starting over also would unnecessarily accumulate additional counsel fees and delay the delivery of the remedial education M.K. is owed.

**IV.     Conclusion**

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment will be granted. An appropriate order follows.

 /s/ Gerald Austin McHugh  
United States District Judge